NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN H. HOLZHAUER, | |
| Plaintiff, | |
| | Civil Action No. 11-2336 |
| v. | |
| | **OPINION** |
| HAYT, HAYT & LANDAU, LLC, | |
| Defendant. | |

**WOLFSON, United States District Judge:**

Presently before the Court is a motion by Plaintiff John H. Holzhauer ("Holzhauer" or "Plaintiff") for an award of attorney's fees pursuant to Fed. R. Civ. P. 54(d) and 15 U.S.C. §1692k(a)(3). Counsel for Plaintiff, Kimmel & Silverman, P.C. ("K&S" or "Plaintiff's Counsel"), seeks fees in the amount of $8,421.50 for 37.2 hours of work. Defendant ("Hayt, Hayt and Landau" or "Defendant") opposes Plaintiff's calculation and contends that the proper award for fees should be $2,929.00. For the reasons set forth below, the Court will grant Plaintiff's motion, in part, and award attorney's fees in the amount of $7,536.50.

**I.    BACKGROUND**

On April 22, 2010, Plaintiff filed a Complaint alleging violations under the Federal Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. Defendant filed an Answer to Plaintiff's Complaint on July 5, 2011. On January 9, 2012, the parties settled this matter for

$2,500.00, and agreed that Plaintiff was entitled to reasonable attorney's fees.[1] On January 10, 2012, the parties discussed the issue of reasonable attorney's fees during a conference with the Honorable Douglas E. Alpert, U.S.M.J. Judge Alpert gave Plaintiff until February 10, 2012, to file a fee petition if the parties were unable to resolve the matter. On February 10, 2012, K&S filed the instant motion seeking attorney's fees in the amount of $8,769. Pl. Pet. for Attorney's Fees & Costs. K&S subsequently reduced the amount it seeks to $8,421.50 for 37.2 hours of work. Pl. Reply at 15.

  II.  DISCUSSION

    a. Standard

  The parties do not dispute that Plaintiff is entitled to reasonable attorney's fees. Pursuant to the FDCPA, a prevailing plaintiff is entitled to "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). The award of attorney's fees is "mandated . . . as a means of fulfilling Congress's intent that the FDCPA should be enforced by debtors acting as private attorneys general." Graziano v. Harrison, 950 F.2d 107, 113 (3d Cir. 1991).

  Nor do the parties dispute that Plaintiff is a prevailing party under § 1692(k). As the Supreme Court found in Hensley v. Eckerhart, 461 U.S. 424 (1983), "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Id. at 433. This District has adopted the Hensley definition in assessing FDCPA claims and agrees that Plaintiff is a prevailing party. See Norton v. Wilshire Credit Corp., 36 F. Supp. 2d 216, 218–19 (D.N.J.1999).

---

[1] K&S notes it does not seek $350 it incurred in costs. Pl. Br. at 4.

The Supreme Court has also explained how to calculate an award of attorney's fees: "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  The calculation provides an objective basis on which to make an initial estimate of the value of the lawyer's services."  Hensley, 461 U.S. at 433.  The calculation produces what is referred to as the lodestar amount.  See Blum v. Stenson, 465 U.S. 886, 888 (1984).  The prevailing party bears the burden of proving, through competent evidence, the reasonableness of the hours worked and rates claimed.  Washington v. Phila. Cnty. Court of Common Pleas, 89 F.3d 1031, 1035 (3d Cir. 1996).  Any party may oppose a fee application by objecting with "sufficient specificity."  Interfaith Cmty. Org. v. Honeywell Int'l., Inc., 426 F.3d 694, 703 n.5 (3d Cir. 2005) (citing Hensley, 461 U.S. at 433).  Once opposed, "the party requesting fees must demonstrate to the satisfaction of the court that its fee request is reasonable."  Interfaith Cmty. Org., 426 F.3d 694 at 703 n.5.

While the lodestar is presumed to yield a reasonable fee, Washington, 89 F.3d at 1035, either party may seek an adjustment of the lodestar amount, but bears the burden of showing that an adjustment is necessary.  Rode v. Dellarciprete, 892 F.2d 1177, 1180 (3d Cir. 1990); Mosaid Techs, Inc., v. Samsung Elecs. Corp., 224 F.R.D. 595, 597 (D.N.J. 2004).  In deviating from the lodestar, courts may consider numerous factors, such as the time spent and labor required; the novelty and difficulty of the legal issues; the customary fee in the community; whether the fee is fixed or contingent; the nature and length of the professional relationship with the client; and awards in similar cases.  See Pub. Interest Research Grp. of N.J. v. Windall, 51 F.3d 1179, 1185 n.8 (3d Cir. 1995) (citing Hensley, 461 U.S. at 434 n.9)

The district court ultimately "retains a great deal of discretion in deciding what a reasonable fee award is." Bell v. United Princeton Props., 884 F.2d 713, 721 (3d Cir. 1989). "[I]n determining whether the fee request is excessive . . . the court will inevitably engage in a fair amount of 'judgment calling' based upon its experience with the case and the general experience as to how much a case requires." Evans v. Port Auth. of N.Y. & N.J., 273 F.3d 346, 362 (3d Cir. 2001).

### b. Analysis

Plaintiff seeks $8,421.50 in attorney's fees. In response, Defendant contends that $2,929.00 is the appropriate fee award. Specifically, Defendant argues that: (1) the hourly rates sought by Plaintiff are unreasonable and excessive; (2) the calculation of fees includes hours not reasonably expended because they were duplicative, excessive, or non-compensable intra-office communication; (3) Plaintiff seeks to recover fees incurred in bad faith after settlement;[2] and (4) the Court should adjust the lodestar amount to reflect what Defendant argues is the limited success of Plaintiff. Def. Opp. at 3-11.

#### i. Hourly Rates

In evaluating the reasonableness of the hourly rates asserted by Plaintiff, the relevant inquiry is the prevailing rate for comparable legal services in the forum of litigation. See, e.g., Interfaith Comm. Org., 426 F.3d at 705. Plaintiff bears the burden "of producing sufficient

---

[2] Defendant provides the Court with no documentation or evidence to support its claim that K&S failed to negotiate in good faith regarding attorney's fees, nor does it cite any authorities to support its position that failure to negotiate a settlement should lead to a reduction in the attorney's fee awarded to counsel. The Court notes that "[a] party entitled to an award of attorney's fees is also entitled to reimbursement for the time spent litigating its fee application." Planned Parenthood v. AG, 297 F.3d 253, 268 (3d Cir. 2002). K&S claims only 4.8 hours for time spent after the January 2, 2012, settlement agreement (of which the Court strikes 0.2 hours for other reasons, stated below), and does not bill for work spent preparing its Reply Brief.

4

evidence of what constitutes a reasonable market rate for the essential character and complexity of the legal services rendered in order to make out a prima facie case." Smith v. Phila. Hous. Auth., 107 F.3d 223, 225 (3d Cir. 1997).  A reasonable rate is determined by "assess[ing] the experience and skill of the prevailing party's attorneys and compar[ing] the rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  Loughner v. Univ. of Pittsburgh, 260 F.3d 173, 180 (3d Cir. 2011) (quoting Rode, 892 F.2d at 1183).  The Court has broad discretion to determine an appropriate hourly rate.  See Bell, 884 F.2d at 721.

In the instant matter, Plaintiff requests compensation for its legal professionals based on their experience: Mr. Kimmel, a named partner, at $325 per hour; Ms. Bennecoff, an associate, at $250 per hour; Ms. Young, an associate, at $200 per hour; Mr. Ginsburg, an associate, at $200 per hour; Mr. Ferris, a law clerk, at $130 per hour; Ms. Sunchych, Ms. O'Connell, Mr. Ryan, and Ms. Grob, paralegals, at $125 per hour each.[3]  K&S notes that these rates are reduced from what they contend are their standard rate, perhaps in order to comport with previous decisions from this District and the Eastern District of Pennsylvania.  In support of its proposed hourly rates, K&S provides the following: (1) affidavits signed by attorneys Kimmel, Bennecoff, and Ginsburg detailing their respective qualifications and participation in the present case; Pl. Br. Ex.

---

[3] Plaintiff claims that when the parties disagree as to the reasonableness of attorney's fees, the Court should conduct a hearing. Pl. Br. at 26 n.7. Plaintiffs cite Lanni v. New Jersey, 259 F.3d 146, 149 (3d Cir. 2001), which states that if there is a dispute over what are the "reasonable market rates" then the Court must hold a hearing. The Third Circuit has also said that "[a] hearing must be held only where the court cannot fairly decide disputed questions of fact without it." Blum v. Witco Chem. Corp., 829 F.2d 367, 377 (3d Cir. 1987); see also Drelles v. Metro Life Ins. Co., 90 Fed. Appx. 587 (3d Cir. 2004). Lanni is inapposite because I am not determining the reasonable market rate, but the reasonableness of K&S's actual rates. As the Court may determine the reasonableness of these hourly rates based on the information on the record, no hearing is necessary.

B; (2) statements in its motion of the qualifications of each of the legal professionals who billed hours in this case, including law clerks and paralegals; id. at 16-23; (3) citations to cases in which Courts have approved hourly rates for K&S similar to the rates K&S proposes in the present case; id. at 26-27; (4) citations to cases in which Courts have awarded similar hourly rates to similarly qualified attorneys from other firms in other FDCPA cases; id. at 27-28; and (5) a print-out from its website which provides the qualifications of some of the legal professionals who billed hours in the present case.  Pl. Br. Ex. C.

      The Court finds that the hourly rates proposed by K&S are reasonable.  In cases in the District of New Jersey and the Eastern District of Pennsylvania, equal or greater hourly rates for K&S have been approved for similar work in similar cases.[4]  E.g., Conklin v. Pressler & Pressler LLP, No. 10-3566, 2012 U.S. Dist. LEXIS 21609 (D.N.J. Feb. 21, 2012); Brass v. NCO Fin. Sys., No. 11-1611, 2011 U.S. Dist. LEXIS 98223 (E.D. Pa. July 22, 2011); Cassagne v. Law Offices of Weltman, Weinberg & Reis. Co., LPA, No. 11-271, 2011 U.S. Dist. LEXIS 135207 (D.N.J. Nov. 23, 2011); Levy v. Global Credit & Collection Corp., No. 10-4229, 2011 U.S. Dist. LEXIS 124226 (D.N.J. Oct. 27, 2011); Weed-Schertzer v. Nudelman, No. 10-6402, 2011 U.S. Dist. LEXIS 108928 (D.N.J. Sept. 23, 2011).  Additionally, comparable rates for similarly experienced attorneys have been approved in other FDCPA cases.  E.g., Harlan v. NRA Group LLC, No. 10-0324, 2011 U.S. Dist. LEXIS 26841 (E.D. Pa. Mar. 2, 2011); (approving rate of $555 per hour for a partner with a national reputation in consumer law, and a rate of $245 per hour for a fourth-year associate); Holliday v. Cabrera & Assocs., P.C., No. 05-0971, 2011 U.S. Dist. LEXIS 161 (E.D. Pa. Jan. 3, 2007) (approving rate of $380 per hour for a partner, and a rate

---

[4] In previous cases, Mr. Ginsburg was a law clerk, and his services were billed at a lower rate. As he is now an associate, an increase to $200 per hour is not unreasonable.

of $275 per hour for another attorney). Consequently, the reduced rates proposed by K&S are consistent with the market rates for similar legal services.

In arguing that the rates proposed by K&S are unreasonable, Defendant relies heavily upon Levy, 2011 U.S. Dist. LEXIS 124226. Def. Opp. at 5-7. Levy involved another motion brought by K&S. There the court found the following compensation to be reasonable: Mr. Kimmel, at $310 per hour; Ms. Bennecoff, at $210; Ms. Young, at $200; Ms. Sunchych, at $110; Mr. Ryan, at $110; and Mr. O'Connell, at $110. Id. at *25. There are slight differences between the rates here and the rates allowed in Levy. Ms. Bennecoff's is $40 more here and all other rates, except Ms. Young's, are $15 more. Ms. Young's rate is the same. Such deviations are expected, given the broad discretion the Court has in determining an hourly rate, as well as the fact that rates potentially increase slightly over time as attorneys become more experienced or as inflation pressures rates higher. See Bell, 884 F.2d at 721.

Additionally, Defendant argues that K&S's hourly rates are unreasonable and should be reduced due to the similarity of K&S's filings in the present case and in previous cases, and because the present case was "straightforward and did not involve complex legal issues or analysis, and the case was not litigated in any significant way." Def. Opp. at 6-8. This argument is applicable to the number of hours billed, not to the hourly rate. If an attorney has done similar work in the past, she may use a template to aid her in a similar matter and would therefore spend fewer hours completing a given task. But the value of her time does not necessarily decrease. To so hold would mean that an attorney would become less valuable with more experience. This is a paradoxical result that the Court will not endorse.

Furthermore, Defendant attempts to weaken the value of the cases in which courts have approved rates similar to the rates that K&S claims in the present case, arguing that the

defendants in those cases recommended the hourly rates, not K&S.  Courts, not litigants, make law.  Whether K&S reduced its rates in the present case because it independently came to the conclusion that its rates were too high—or because it was repeatedly admonished for proposing inflated rates—has little bearing on the reasonableness of the rates before me now.

For the reasons stated above, the Court finds that the hourly rates proposed by K&S, which have been approved for K&S in similar cases and are consistent with the market rates for similar services, are reasonable.

### ii.  Hours Billed

A court must "decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant or otherwise unnecessary."  Pub. Interest Research Grp. of N.J., 51 F.3d at 1188 (quoting Hensley, 461 U.S. at 433).  Counsel certifies that it has expended a total of 37.2 hours of attorney and support staff time on this case.  This reflects Plaintiff Counsel's voluntary reduction of its time by 1.6 hours.  Specifically, Plaintiff's Counsel states that it has expended the following hours on this case: Mr. Kimmel (3.9 hours); Ms. Bennecoff (15.8 hours); Ms. Young (4.4 hours); Mr. Ginsburg (4.4 hours); Mr. Ferris (1.3); Ms. Sunchych (0.5 hours); Ms. Grob (5.4 hours); Ms. O'Connell (0.2 hours); and Mr. Ryan (1.3 hours).  Pl. Br. at 2-3.  The Court finds the number of hours expended to be reasonable in some aspects and unreasonable in others and will reduce the hours billed pursuant to the analysis below.

#### 1.  Fees for Potentially Duplicative Work

Defendant identifies nine entries by K&S that it believes are duplicative, and provides explanations for three of these entries.  Def. Opp. at 9-10; Ex. B.  First, Defendant argues that the 0.2 hours that Ms. Bennecoff spent on April 22, 2011, reviewing the facts of the case with

Plaintiff and confirming their accuracy is duplicative of the April 11, 2011, entry in which Ms. Young reviewed the facts of the case with Plaintiff to confirm their accuracy. Def. Opp. at 9-10. The Court disagrees. There are a number of reasons that two attorneys would need to review the facts. For example, Federal Rule of Civil Procedure 11(b) demands that counsel conduct a "reasonable inquiry" to ensure that the representations it makes are accurate. The Court finds that spending 0.2 hours to double check the facts is not unreasonable. Among other reasons, it helps ensure compliance with Rule 11 and avoids the possibility of either party wasting time acting upon inaccurate information, and is therefore not unreasonable.

Next, Defendant claims that the 0.6 hours that K&S billed for Mr. Ferris's drafting of the discovery request is excessive, since Mr. Ferris used a template to draft the letter, and simply had to change the caption.[5] Def. Opp. at 10. While templates can reduce the time it takes to produce a document, it still takes time to review a template and tailor the template based on the specifics of a case.[6] Mr. Ferris presumably had to review the letter to ensure that each request was

---

[5] Similarly, Defendant identifies the April 5, 2011 entry in which Ms. Young spent 1.1 hours drafting the Complaint as an entry that it claims should be reduced due to the similarity of the Complaint in the present case and the complaints in Weed-Schertzer and Levy. Def. Opp. at 8. Defendant claims that because of similarities among these complaints, it should not have taken K&S 1.1 hours to draft the Complaint. Several of the paragraphs are identical or nearly identical, and concern allegations regarding things such personal jurisdiction, venue, background of the FDCPA, and construction of applicable law. The Court notes that it would be unreasonable for K&S to start from scratch and draft new paragraphs regarding, for example, venue, and finds that 1.1 hours is a reasonable amount of time to spend drafting, reviewing, and editing the Complaint.

[6] K&S has recently sought fees in numerous other FDCPA actions using similar filings as those submitted in this matter; in those cases, the various courts reduced both the proposed hourly rates as well as the number of hours expended. See, e.g., Conklin, 2012 U.S. Dist. LEXIS 21609 (reducing K&S's fees from $28,005.70 to $16,387); Freid v. Nat'l Action Fin. Services, Inc., No. 10-2870, 2011 U.S. Dist. LEXIS 149668 (D.N.J. Dec. 29, 2011) (reducing K&S's fees from $97,028.59 to $11,944 ); Brass, 2011 U.S. Dist. LEXIS 98223 (reducing K&S's fees from $5,096.50 to $2,457.20). However, in the present case, K&S has billed fewer hours for tasks

applicable to the present case.  Failure to do so could lead to Defendant wasting time providing unnecessary discovery, and could expose Plaintiff to sanctions under Fed. R. Civ. P. 26(g)(1)(b).  Consequently, the Court finds that the 0.6 hours that Mr. Ferris spent completing this task is reasonable, and will not reduce this entry.

Additionally, Defendant argues that the two August 5, 2011, entries by Mr. Kimmel which both read "Review file and discuss case with client to arrive at demand; Email to Karen Wachs demand," are duplicative of one another.  Def. Br. at 10.  The Court notes that K&S voluntarily struck the second of these entries, reducing its number of hours billed by 0.3.  Pl. Reply at 15.  The Court agrees that it was prudent for K&S to strike the second entry, but declines to reduce the first entry by 0.3 hours as Defendant requests.

Finally, Defendant identifies six entries that it claims are duplicative, but provides no explanation.  Def. Opp. Ex. B.  The Court has reviewed these entries and finds no reason why they should be considered duplicative.

### 2.  *Potentially Excessive Entries*

Defendant identifies 22 entries by K&S that it believes are excessive, and provides specific reasons for objecting to three of these entries.  Def. Opp. at 8; Ex. B.  First, Defendant argues that the one hour that Ms. Young billed for reviewing the file and preparing a pre-litigation letter to Defendant on February 16, 2011, is excessive because she used a template, and only had to write two or three original paragraphs.  However, this argument fails to take into

---

completed with the aid of templates.  Compare, e.g., Pl. Br. Ex. A at 3 (K&S claims 0.6 hours for drafting a discovery request and a Rule 26 disclosure, and sending an E-mail), with Docket Entry 25 Ex. B at 5, Conklin, 2012 Dist. LEXIS 21609 (K&S billed 1.5 hours, which the Court reduced to one hour, for drafting a discovery request).

account the time that Ms. Young spent reviewing the file. One hour to draft and review a letter as well as review the file to prepare the letter is not excessive.

Next, Defendant argues that on July 5, 2011, Ms. Bennecoff spent 0.5 hours reviewing the Answer and Corporate Disclosure and that this figure should be reduced to 0.3 hours. Defendant's Answer is only eight pages long, and contains a significant amount of standard language. Thus, the Court finds that 0.3 hours is a reasonable amount of time for reviewing the Answer and the Corporate Disclosure. Thus, this entry will be reduced by 0.2 hours.

Defendant also argues that the 0.2 hours that Ms. Bennecoff spent on January 2, 2012, reviewing an eleven word email from ECF regarding the entry of appearance of Mr. Ginsburg is excessive, and should be reduced to 0.1 hours. This is a routine filing and requires little to no analysis. Therefore, the Court agrees, and this entry shall be reduced accordingly.

Finally, Defendant identifies 19 additional entries that it asks the Court to find excessive and reduce accordingly, but provides no explanations as to why these entries should be deemed excessive, beyond its general objection that "Plaintiff has provided no evidence or support that the amount of the time billed was reasonable." Def. Opp. at 8 (emphasis in original). Defendant asserts that because "Plaintiff merely submits itemized time entries declaring the amount billed, but nothing submitted supports the implied assertion that the entries themselves are reasonable," id. at 8-9, the Court should strike the entries identified by Defendant as excessive. According to the Court in Bell:

> [T]he adverse party's [objections] cannot merely allege in general terms that the time spent was excessive . . . . [Rather], they must generally identify the type of work being challenged . . . and . . . specifically state the adverse party's grounds for contending that the hours claimed . . . are unreasonable.

884 F.2d at 720.

Defendant is correct in its assertion that Plaintiff has the burden of proving the reasonableness of the fees it requests. However, Defendant's claim that Plaintiff has the burden of providing detailed explanations to justify each and every tenth of an hour it bills, see Def. Opp. at 8-9, is overstated. While a fee petition should include "some fairly definite information as to the hours devoted to various general activities . . . , it is not necessary to know the exact number of minutes nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." Washington, 89 F.3d 1031 at 1037-38 (internal quotation marks omitted) (quoting Rode, 892 F.2d at 1190)). To require a party seeking attorney's fees to provide a thorough explanation as to why, for example, it billed 0.2 hours speaking to Defense counsel, see Pl. Mot. Ex. A at 5, would be an onerous task, and would create more billable hours, an outcome that Defendant surely wishes to avoid. Nevertheless, the Court has reviewed these entries and finds that none of these additional 19 entries is excessive, and makes no further reductions for excessive hours.

### 3. Intra-Office Communication

Defendant also argues that K&S has billed for services that are non-compensable because they relate to intra-office communication. In support of its position, Defendant cites Citibank, N.A. v. Hicks, 2004 U.S. Dist. LEXIS 30432, at *18 (E.D. Pa Aug. 24, 2004).[7] The court in Citibank said that "when several attorneys bill a large number of hours for strategy and conferencing, a reduction in the fee request may be appropriate," 2004 U.S. Dist. LEXIS 30432, at *18 (emphasis added), and relied on Daggett v. Kimmelmann, 811 F.2d 793, 797 (3d Cir.

---

[7] The court in Citibank exercised diversity jurisdiction and applied Illinois state law to resolve a dispute over attorney's fees provided for by contract, not by statute. Nevertheless, as the court in Citibank relies on Daggett, *infra*, in reducing the number of billable hours for intra-office communication, the case is instructive.

1987). Citibank, however, does not adequately support Defendant's argument. It does not hold that billing for intra-office communication is *per se* unreasonable and that attorneys may not bill any hours for intra-office communication. In fact, the court in Citibank "recognize[d] the value of attorney communication and conferencing in preparation and daily management of a lawsuit." Citibank, 2004 U.S. Dist. LEXIS 30432, at *17; see also Rodriguez-Hernandez v. Miranda-Velez, 132 F.3d 848, 860 (1st Cir. 1998) ("Careful preparation often requires collaboration and rehearsal…."). Nevertheless, courts may reduce the number of hours attorneys in a firm bill for communication with co-counsel if, based on the facts of a particular case, the court finds that the hours billed are unreasonable. Daggett, 811 F.2d at 797 (finding that excessive communication among Plaintiffs' attorneys was one factor which justified the District Court's decision to reduce the number of hours that each attorney billed by ten percent); Citibank, 2004 U.S. Dist. LEXIS 30432, at *17 (reducing the 114.4 hours billed by Plaintiff's Counsel for communication among attorneys by half, when 524.1 total hours were billed). In the present case, approximately 14.1 out of 37.2 hours billed by K&S relate to intra-office communication. Based on the numbers of hours billed for intra-office communication, Defendant asks the Court to strike all entries relating to intra-office communication, which the Court will not do.

In both Daggett and Citibank, the courts focused on the number of hours billed for communication among attorneys, not between attorneys and other legal staff. See Daggett, 811 F.2d at 797-98; Citibank, 2004 U.S. Dist. LEXIS 30432, at *17-18. In the present case, only approximately 4.8 hours out of the 37.2 total hours are billed for communication between K&S attorneys. The remaining 9.3 hours billed for intra-office communication are billed for communication between attorneys and paralegals. Communication between attorneys and paralegals facilitates delegation, which allows a law form to conduct its business at a lower cost,

13

as paralegal services are billed at a significantly lower hourly rate.  In fact, courts must not "approve [of] the wasteful use of highly skilled and highly priced talent for matters easily delegable to non-professionals or less experienced associates." Ursic v. Bethlehem Mines, 719 F.2d 670, 677 (3d Cir. 1983).  Thus, the lodestar amount may be reduced when an experienced attorney bills hours for work that could have been completed by non-attorney staff. See id. at 677 ("A Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn.").

Consequently, the Court finds that it is reasonable that approximately 12% of K&S's billable hours involve communication between K&S's attorneys.  Cf. Citibank, 2004 U.S. Dist. LEXIS 30432, at *17 (halving the number of hours billed for communication among attorneys when 21.8% of the hours billed were billed for communication among attorneys).  As a result, no entries will be struck or reduced solely based on the rationale that they involve intra-office communication.

Nevertheless, numerous entries are non-compensable because they involve intra-office communication related to administrative tasks.[8]  "As a general rule, time that would not be billed to a client cannot be imposed on an adversary.  Thus, administrative tasks, which are not the type normally billed to a paying client, may not be recovered by a party through a fee petition." Alexander v. NCO Fin. Sys., 2011 U.S. Dist. LEXIS 64211, at *19 (E.D. Pa. June 16, 2011) (citations omitted).  Indeed, certain administrative tasks not normally billed to clients such as

---

[8] Defendant terms no entries "administrative."  But an objection to a fee need only be sufficiently specific to "raise a material fact issue as to the accuracy of representations as to hours spent, or the necessity for their expenditure," so as to put the other party on notice that it must defend its fee position. Bell, 884 F.2d at 719-20 (quoting Cunningham v. City of McKeesport, 753 F.2d 262, 267 (3d Cir. 1985)).  Defendant's characterization of certain entries as non-compensable intra-office communication was sufficient to put K&S on notice that it needed to defend its position.  Furthermore, K&S is aware that it may not bill for administrative tasks, as it claims that it omitted administrative entries from its invoice. See Pl. Br. at 4 n.5.

14

"opening a file in a database, mailing letters, and copying documents to a CD," may not be recovered by a party through a fee petition. Id., at *20; see also Halderman v. Pennhurst State Sch. & Hospital, 49 F.3d 939, 942 (3d Cir. 1995) ("The fact that private lawyers may perform tasks other than legal services for their clients, with their consent and approval, does not justify foisting off such expenses on an adversary under the guise of reimbursable legal fees."). However, tasks such as "discussions with a client, creating a factual summary, and preparing an outline of linked events, have been included in calculations . . . even if performed by a paralegal." Brass, 2011 U.S. Dist. LEXIS 98223, at *16.

Here, the Court finds that the following billed hours are administrative and will reduce the hours billed for the following entries by the amount noted:

| Date of Entry | Entry | Legal Professional | Amount of Reduction |
| --- | --- | --- | --- |
| Oct. 18, 2010 | Prepare a note in Amicus | Mr. Kimmel | 0.1 |
| Apr. 22, 2011 | Receipt of email from Pay.gov confirming payment for complaint, saved in Amicus | Ms. Bennecoff | 0.1[9] |
| Apr. 22, 2011 | Email to SY re: question regarding notation on file; Review response | Ms. Bennecoff | 0.2 |
| Apr. 22, 2011 | Review and respond to ALB email regarding notation on file | Ms. Young | 0.2 |
| May 6, 2011 | Prepare Copies of Complaint and Cover Sheet to send to Defendant, Prepare copies of Notice and Waiver for File | Ms. Sunchych | 0.1 |
| July 29, 2011 | Email to DG to send to Defendant's Counsel and Calendar | Ms. Bennecoff | 0.1 |

---

[9] In this entry, K&S bills 1.5 hours at a rate of $250 per hour. This should total $375, but Plaintiff's Counsel only bills $300. Whether a mistake or a reflection of what K&S believes is reasonable, the Court will award K&S only $300 for this entry.

15

| July 29, 2011 | Email correspondence to DG re: reserving conference room for dep | Ms. Bennecoff | 0.1 |
| July 29, 2011 | Sent Discovery Requests to Defendant's Counsel via email and Regular US Mail; Copied to Amicus; Calendared response date; Reserve conference room | Ms. Grob | 0.3 |
| July 29, 2011 | Review email from DG indicating discovery requests have been sent to Defendant | Ms. Bennecoff | 0.1 |
| July 29, 2011 | Review email from DG indicating that the deposition notice was sent to Defendant and room reserved for dep | Ms. Bennecoff | 0.1 |
| Aug. 1, 2011 | Calendar Deposition Date | Ms. Grob | 0.1 |
| Aug. 3, 2011 | email to DG to return her call | Ms. Bennecoff | 0.1 |
| Sept. 12, 2011 | Calendared follow-up | Ms. Grob | 0.1 |
| Sept. 29, 2011 | Email to DG adjourn or get via telephone die [sic] to preplanned vacation day | Ms. Bennecoff | 0.1 |
| Oct. 7, 2011 | Email to DG to follow-up with Defendant's counsel about the status of discovery responses and to reschedule dep | Ms. Bennecoff | 0.1 |
| Oct. 7, 2011 | Email from ALB about following up on discovery responses and rescheduling deposition in this matter | Ms. Grob | 0.1 |
| Nov. 15, 2011 | Faxed continuance letter to court & defendant's counsel | Ms. Grob | 0.1 |
| Jan. 18, 2012 | Email to DG to make sure fee petition calendared | Ms. Bennecoff | 0.1 |
| Jan. 18, 2012 | Email communication from ALB re: calendaring fee petition due date; Calendar same | Ms. Grob | 0.1 |
| Feb. 19, 2012 | PDF motion, brief, COS, TOA, TOC; Efile | Ms. Bennecoff | 0.2 |

|  |  | **TOTAL REDUCTION** | **2.5** |
|---|---|---|---|

As a result, this time will be subtracted from the time submitted by K&S as indicated above.

### iii. Proportionality of Attorney's Fees to Settlement Amount

Defendant contends that the Court should reduce the lodestar amount to reflect what Defendant argues is a proportional discrepancy between the attorney's fees that K&S requests and the $2,500 settlement amount. The Court disagrees. In Hensley, the Supreme Court held that under 42 U.S.C. § 1988 (remedies for violations of the Civil Rights Act of 1964), "the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees." 461 U.S. at 440. This holding also applies when determining attorney's fees under the FDCPA. Graziano, 950 F.2d at 114; see also Hensley, 461 U.S. at 424 ("[T]he standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'"). However, in Riverside v. Rivera, 477 U.S. 561 (1986), the Court declined to extend Hensley to "adopt a strict rule that attorney's fees . . . be proportionate to damages recovered." Id. at 483-84.

In general, reasonable attorney's fees are "adequate to attract competent counsel, but . . . do not produce windfalls to attorneys." Student Pub. Interest Research Grp. of N.J. v. AT&T Bell Labs., 842 F.2d 1436, 1448 (3d Cir. 1988) (citations omitted). Congress' inclusion of the attorney's fee provision of the FDCPA sought to ensure that "the Act . . . be enforced by debtors acting as private attorneys general." Graziano, 950 F.3d at 107. Absent the attorney's fees provision, attorneys would be less inclined to take on FDCPA cases, and the rights of debtors wronged by creditors in violation of the FDCPA would not be protected. Consequently, the

purpose of the statute, deterring abusive debt collection practices, see 18 U.S.C. 1962(e), would be frustrated.

Additionally, in the present case, the ratio of attorney's fees to the award amount, 3.0 to 1, is consistent with other FDCPA cases in this District and the Eastern District of Pennsylvania involving K&S. E.g. Conklin, 2012 Dist. LEXIS 21609 (7.8 to 1); Brass, 2011 U.S. Dist. LEXIS 98223 (2.4 to 1); Cassagne, 2011 U.S. Dist. LEXIS 135207 (5.4 to 1); Levy, 2011 U.S. Dist. LEXIS 124226 (5.8 to 1); Weed-Schertzer, 2011 U.S. Dist. LEXIS 108928 (3.4 to 1).

Consequently, the Court finds that Defendant has not met its burden of proving that the lodestar amount is unreasonable, see Rode, 892 F.2d at 1180, and declines to adjust the lodestar amount based on the amount of Plaintiff's recovery.

    iv. Lodestar Calculation

Based on the above analysis, the Court finds that the following hourly rates and the following number of hours are reasonable:

| Legal Professional | Hourly Rate | Hours Worked | Total Fee |
| --- | --- | --- | --- |
| Mr. Kimmel | $325 | 3.8 | $1,235 |
| Ms. Bennecoff | $250 | 14.4 | $3,600 |
| Ms. Young | $200 | 4.2 | $840 |
| Mr. Ginsburg | $200 | 4.4 | $880 |
| Mr. Ferris | $130 | 1.3 | $169 |
| Ms. Sunchych | $125 | .4 | $50 |

| Ms. Grob | $125 | 4.6 | $575 |
| --- | --- | --- | --- |
| Ms. O'Connell | $125 | .2 | $25 |
| Mr. Ryan | $125 | 1.3 | $162.50 |
| **TOTAL** | | **34.6** | **$7,536.50** |

As a result, the total amount to be awarded is $7,536.50 in attorney's fees.

### III.    CONCLUSION

Based on the foregoing, the Court will grant in part and deny in part Plaintiff's Motion for Attorney's Fees. An appropriate order shall follow.


Dated: August 10, 2012                                          /s/ Freda L. Wolfson
                                                                Freda L. Wolfson, U.S.D.J.